**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SCOTTSDALE INSURANCE CO.,

    Plaintiff,

    v.

THE CITY OF HAZLETON, et al.,

    Defendants.

NO. 3:07-CV-1704

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Plaintiff-Counterclaim Defendant Scottsdale Insurance Company's Motion for Summary Judgment. (Doc. 18.) Scottsdale Insurance Company ("Scottsdale") moves for summary judgment against Defendant-Counterclaim Plaintiff City of Hazleton ("Hazleton") as to all Counts of Scottsdale's complaint (Doc. 1) as well as Hazleton's counterclaims for breach of contract and bad faith. Scottsdale's complaint includes three (3) Counts, each requesting declaratory judgment regarding its coverage liability on a public entity policy of insurance issued to Hazleton. For the reasons stated below, the Court will dismiss Count I of Scottsdale's complaint for lack of subject matter jurisdiction and grant Scottsdale's motion as to Counts II and III. The Court will, therefore, enter declaratory judgment as to Counts II and III. In addition, the Court will grant Scottsdale's motion as to Hazleton's counterclaims for breach of contract and bad faith. Hazleton also raises a third counterclaim, requesting declaratory judgment in its favor, mirroring the declaratory relief requested by Scottsdale in Counts I, II, and III of its complaint. In light of its disposition of Scottsdale's complaint, the Court will dismiss Hazleton's third counterclaim for declaratory relief as moot.

This Court has jurisdiction over the claims of Scottsdale and counterclaims of Hazleton pursuant to 28 U.S.C. § 1332 based on diversity of citizenship.

**BACKGROUND**

Scottsdale issued a public entity policy of insurance, effective January 1, 2005, to Hazleton, a political subdivision organized and existing under the laws of Pennsylvania. (Pl.'s Statement of Material Facts ¶¶ 5, 13, Doc. 19) (hereinafter "Pl.'s Statement").[1]  The present coverage dispute arose out of a civil rights suit instituted against Hazleton in 2006. The parties do not dispute that the policy provided insurance to the city at that time.  (*Id*. ¶ 6.)

**I.      The Underlying Litigation**

On August 15, 2006, a civil complaint was filed against Hazleton by fourteen (14) plaintiffs, consisting of both individuals and non-profit entities, challenging the validity of certain ordinances adopted by city officials ("the underlying action").  The underlying action was docketed in this Court, under docket number 3:06-cv-1586.  (*Id*. ¶ 7.)  The complaint raised claims for federal constitutional, state constitutional, and federal statutory violations and included a prayer for compensatory damages, declaratory and injunctive relief, and attorney's fees.  (Pl.'s App., Ex. B, Doc. 20.)[2]

---

[1]      The Court refers to Scottsdale's Statement of Material Facts to which it contends there is no dispute, submitted pursuant to Local Rule 56.1, only where facts are admitted by Hazleton.

[2]      In addition to Hazleton, Scottsdale filed the present declaratory judgment action against the remaining plaintiffs in the underlying action.  These Defendants have been served with Scottsdale's complaint, but have not filed an answer or otherwise responded.

Hazleton sent notice of the underlying action to its insurance carrier, Scottsdale.  On August 21, 2006, a Scottsdale claims specialist, James Lavigne, was assigned to handle the city's insurance claim.  Lavigne assigned the law firm of Deasey, Mahoney, & Bender, Ltd. ("the Deasey firm"), to represent the city.  (Pl.'s Statement ¶¶ 1, 8.)  During the course of the litigation, several other legal organizations assisted in the city's defense on a volunteer basis.  (Def.'s App., Ex. 4, Ex. A, HS-10, Doc. 39.)  In addition, Hazleton retained the services of attorney Kris Kobach, who billed the city directly.  (Pl.'s Statement ¶¶ 66-68.)

On October 30, 2006, plaintiffs in the underlying action filed an amended complaint.  (Pl.'s Statement ¶ 9.)  By letter dated November 9, 2006, Lavigne notified Hazleton that Scottsdale was providing a defense to the city in the underlying action pursuant to a reservation of rights.  (*Id*. ¶ 10.)

On January 12, 2007, plaintiffs in the underlying action filed a second amended complaint ("SAC").  (*Id*. ¶ 11.)  Unlike prior pleadings, the SAC did not include an explicit prayer for monetary damages, but retained a prayer for declaratory and injunctive relief as well as attorney's fees.  (Pl.'s App., Ex. E.)  After the SAC's filing, Scottsdale continued to provide a defense to the city through its assigned counsel, the Deasey firm.  (Pl.'s Statement ¶ 12; Def.'s Responsive Statement of Material Facts ¶ 12, Doc. 32.)

Following a bench trial on the underlying action from March 12, 2007 through March 22, 2007, before Judge Munley of this Court, the Court, on July 26, 2007 ruled in favor of plaintiffs on several claims, dismissed several claims, and determined that several plaintiffs lacked standing.  (Dkt No. 06-cv-1586, Doc. 409 at 190-92.)  The Court issued a permanent injunction enjoining Hazleton from enforcing any provision of the disputed ordinances.  (*Id*. at 190.)  The Court's verdict afforded no other relief.  (*Id*. at 190-92.)

3

Hazleton, through the Deasey firm, appealed the verdict to the U.S. Court of Appeals for the Third Circuit. Scottsdale approved the filing of the appeal and continued to fund the city's representation by Deasey through briefing and oral argument. (Def.'s App., Ex. 4, Ex. E, HS-202, Doc. 43.) The matter is currently awaiting decision by the Court of Appeals.

After entry of judgment by this Court, Plaintiffs submitted a petition for an award of costs and attorney's fees, pursuant to 42 U.S.C. § 1988. (Dkt. No. 06-cv-1586, Doc. 416.) That petition is currently stayed pending outcome of the appeal. (Dkt. No. 06-cv-1586, Doc. 420.)

## II.    The Policy

The sections of Scottsdale's public entity policy with Hazleton relevant to the present coverage dispute are as follows:

**SECTION I – COVERAGES**

1.    INSURING AGREEMENT

We will pay on behalf of the insured all "loss" resulting from "public officials wrongful act(s)" but only with respect to "claims" first made against the insured during the "policy period" or Extended Reporting Period. The "public officials wrongful act(s)" must occur within the "coverage territory."[3]

2.    DEFENSE AND SUPPLEMENTARY PAYMENTS
...

The insured, except at its own cost and for its own account, will not, without our written consent, make any payment, admit any liability, settle any "claim," assume any obligation, or incur any expense.

We will have the right, but no duty, to appeal any judgment.

---

[3]    The parties do not dispute that the claims in the underlying action were made for "public officials wrongful act(s)," that they were made within the "policy period," or that they occurred within the "coverage territory."

4

Subject to the [policy limit] as applicable to each "public officials wrongful act," we will pay all costs taxed against the insured in any "suit" defended by us.

...

## SECTION II – EXCLUSIONS

We will not be obligated to make any payment nor to defend any "suit" in connection with any "claim" made against the insured:

...

9. For "claim(s)," demands, or actions seeking relief or redress in any form other than monetary damages, or for any fees, costs or expenses which the insured may become obligated to pay as a result of any adverse judgment for declaratory relief or injunctive relief; however, we will afford defense to the insured for "suit(s)" in which monetary damages are requested if not otherwise excluded;

...

## SECTION VI – PUBLIC OFFICIALS LIABILITY – DEFINITIONS

Whenever used in this Coverage Form, the following words have these meanings:

1. "Claim" means a written notice from any party that it is their intention to hold an insured responsible for "loss" resulting from a "public officials wrongful act" covered by this Coverage Form.

...

3. "Loss" means any monetary amount which the insured is legally obligated to pay as a result of "public officials wrongful act(s)" covered by this Coverage Form and will include, but not be limited to, judgments and settlements, but "loss" will not include fines imposed by law, or matters which may be deemed uninsurable under the law pursuant to which this Coverage Form will be construed.

4. "Loss adjustment expense" means all expenditures including, but not limited to, costs of investigations, experts, adjustment services, legal services and court costs incurred by us as a result of coverage afforded by this Coverage Form. "Loss Adjustment Expense" will not include salaries of our employees.

...

6. "Suit" means a civil proceeding in which monetary damages are alleged because of a "public officials wrongful act" to which this Coverage Form applies.

(Pl.'s App., Ex. A) (hereinafter "Policy").

## III.    The Reservation of Rights Letter

By letter dated November 9, 2006—after the first amended complaint was filed in the underlying action and prior to the second amendment—Scottsdale notified Hazleton that it would continue to defend the city pursuant to a reservation of rights to later assert defenses to coverage under the policy.  The reservation of rights letter directed Hazleton's attention to the above-quoted policy language and stated, in relevant part:

Pursuant to Exclusion 9, there is no coverage for any fees, costs or expenses, which the City of Hazleton may become obligated to pay as a result of any adverse judgment for declaratory relief or injunctive relief.

...

It is our understanding that the City of Hazleton has agreed to pay Kris Kobach, Esquire, for his services.

Scottsdale Insurance Company respectfully declines to contribute to paying for the cost of the services of Kris Kobach, Esquire.  The cost of his services do not meet the definition of "loss adjustment expenses" of the Public Officials Liability Coverage Part.

In addition, the payment of the City of Hazleton for the cost of the services of Kris Kobach, Esquire, is without the consent of Scottsdale Insurance Company.  Thus, the payment by the City of Hazleton to Kris Kobach, Esquire, will be at the cost of the City of Hazleton and for its own account.

...

Scottsdale Insurance Company is reserving the right to assert all

defenses to coverage under the policy. In investigating the claim, defending any suit, or attempting any compromise settlement, Scottsdale Insurance Company is not waiving any rights nor admitting any obligation under the policy.

(Pl.'s App., Ex. D.)

## IV. The Present Action

Scottsdale filed the present action on September 18, 2007, after the appeal was filed in the underlying action. (Doc. 1.) Scottsdale's complaint raises three (3) Counts. Each seeks declaratory relief regarding its coverage liability under the Hazleton policy. Count I seeks a declaration that Scottsdale owed no duty of defense or indemnity to Hazleton in the underlying action or its appeal. Count II seeks a declaration that it has no duty to pay any attorney's fees, costs, or expenses awarded to the underlying action plaintiffs against Hazleton. Count III seeks a declaration that Scottsdale has no duty to pay attorney's fees, costs, or expenses incurred by Hazleton for attorneys or consultants it retained directly without the prior written approval of the insurer in the underlying action or its appeal.

Hazleton raises three (3) counterclaims. (Doc. 13.) The first is for breach of contract, alleging that Scottsdale breached its duties under the policy by refusing to pay for the services of Mr. Kobach and by refusing to pay costs and attorney's fees which may awarded to plaintiffs in the underlying action. The second counterclaim is for statutory bad faith under 42 Pa. Cons. Stat. § 8371. Hazleton alleges a variety of conduct it argues constitutes bad faith. The third counterclaim is a request for declaratory relief in the city's favor mirroring the relief requested in Counts I, III, and III of Scottsdale's complaint.

Scottsdale filed the instant motion for summary judgment on May 15, 2008. (Doc. 18.) The insurer moves for summary judgment in its favor as to all Counts in its complaint

as well as Hazleton's breach of contract and bad faith counterclaims.  The motion has been fully briefed, argued, and is ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *Id.*  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**DISCUSSION**

I.      **Scottsdale Complaint**

A.      Count I

In Count I of its complaint, Scottsdale seeks a declaration that it had no duty of defense or indemnity in the underlying action or its appeal. An insurer's duty to defend and duty to indemnify are separate obligations. *See Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997) ("the duty to defend is separate from and broader than the duty to indemnify"). The Court, therefore, discusses the duties separately, starting with the duty to defend.

9

The existence of a "case" or "controversy" within the meaning of Article III, § 2, clause 1, of the U.S. Constitution is a prerequisite to the jurisdiction of a federal court in any action, including a declaratory judgment action. Indeed, the Declaratory Judgment Act provides that, "In a case of *actual controversy within its jurisdiction* ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). In *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937), the U.S. Supreme Court articulated a test to determine whether an action presents a "case or controversy":

> A "controversy" ... must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Id*. at 240-241.

Although it is a long-settled principle that "a controversy between an insurer and its insured as to the extent of the insurer's responsibility under the insurance policy involves the rights of the insurer and will support a declaratory judgment proceeding[,]" *Md. Cas. Co. v. Consumers Fin. Serv. Inc, of Pa.*, 101 F.2d 514, 515 (3d Cir. 1938), the timing of this action renders moot the issue of Scottsdale's duty to defend the underlying action and its appeal. Because the issue is moot, the Court lacks jurisdiction to entertain the claim.

It is undisputed that Scottsdale appointed and funded the Deasey firm to defend Hazleton in the underlying action; that Deasey filed an appeal of Judge Munley's adverse

judgment in the underlying action; that Deasey continued to defend Hazleton in the appeal; and that the appeal is already briefed, argued, and awaiting decision by the Third Circuit Court of Appeals. Under Pennsylvania law, "a declaration that there was no duty to defend will not entitle [Scottsdale] to recover any costs it has expended" in defending the underlying action. *Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1220 (3d Cir. 1989). In effect, Scottsdale asks the Court to declare it had no obligation to provide a defense already completed where it cannot recoup the cost from the insured. This Court does not have jurisdiction to opine on what Scottsdale's rights would have been had it chosen to exercise them. *See Aetna,* 300 U.S. at 241 (a justiciable "controversy" must be "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts").

  This result is consistent with the analysis of the Third Circuit Court of Appeals in *Terra Nova*, 887 F.2d 1213. In that case, an insurer appointed counsel to defend its insured in a state court tort action pursuant to a reservation of rights, then filed an action in federal district court seeking a declaration that it had no duty to defend the insured in the underlying action. *Id*. at 1217. The insured brought a motion to stay the federal declaratory judgment action pending the outcome of the underlying action, which the district court granted. *Id*. The insurer appealed the stay. *Id*. In the context of deciding whether the stay was effectively a final decision amenable to the exercise of appellate jurisdiction, the Court of Appeals reasoned:

> [I]f [the insurer] continues to provide a defense, the duty to defend will become moot once the state court actions conclude. Since the district

> court would then be unable to reach the merits of the duty to defend, the stay order would amount to a refusal to adjudicate the merits of this issue.
>
> [The insurer's] claim for a declaration that it has no duty to defend will be moot if, as we believe, the Pennsylvania Supreme Court would preclude an insurer who provides a defense under reservation of rights from recovering the cost of that defense from its insured if it is later determined that there is no coverage.

*Id*. at 1219.

The Pennsylvania Supreme Court has not yet addressed the question, the outcome of which was predicted in *Terra Nova*, of whether an insurer may seek reimbursement for its defense of an insured where there is later determined to be no duty to defend. Several Pennsylvania courts have subsequently agreed with the *Terra Nova* court that an insurer does not have such a reimbursement right, at least in absence of specific language to the contrary in the policy.[4] *LA Weight Loss Ctrs., Inc. v. Lexington Ins. Co.*, No. 1560, 2006 Phila. Ct. Com. Pl. LEXIS 127 (Phila. Pa. C.P. 2006); *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 948 A.2d 834 (Pa. Super. Ct. 2008).

As *Terra Nova* remains good law in the Third Circuit on an insurer's reimbursement rights after tendering a defense, this Court concludes, consistent with the above analysis, that the question of Scottsdale's duty to defend Hazleton in the underlying action and its appeal became moot once the defense was completed. As the *Terra Nova* court indicated, the Court has no jurisdiction to reach the merits of the duty to defend because Scottsdale's claim for a declaratory judgment does not raise a "case or controversy" within the meaning

---

[4] The Court notes that there is no language in Hazleton's public entity policy as it pertains to public officials' liability establishing a contractual right to reimbursement of defense costs where it is later determined there is no duty to defend. (Pl.'s App., Ex. A.)

of Article III of the U.S. Constitution.

Scottsdale also requests a declaration that it owes no duty of indemnity to Hazleton. To the extent that Scottsdale asks the Court to opine on its duty to indemnify prior to the current posture of this case and entry of judgment, its request is moot. To the extent the insurer asks for a declaration respecting its current obligations to the city, those items of coverage disputed by the parties are discussed below.

Based on the foregoing, the Court will dismiss Count I for lack of subject matter jurisdiction.

B.    Count II

Count II of Scottsdale's complaint seeks a declaration that it has no duty to indemnify Hazleton for any attorney's fees, costs, or expenses the city may become obligated to pay to the plaintiffs in the underlying action, as a result of the judgment against the city, pursuant to 42 U.S.C. § 1988. This claim raises a question appropriate for disposition by declaratory judgment. *See Md. Cas. Co.,* 101 F.2d at 515 ("a controversy between an insurer and its insured as to the extent of the insurer's responsibility under the insurance policy involves the rights of the insurer and will support a declaratory judgment proceeding"); *see also* 20f-376f John Alan Appleman, *Appleman on Insurance Law and Practice* § 11332 (1st ed.) ("[T]he existence of a cause of action is not essential to a bill for declaratory judgment, since the bill may seek only an adjudication of freedom from claims. Such immunity from claims is considered a 'right', upon which the courts may adjudicate.").

The parties agree that Pennsylvania substantive law governs the interpretation of Hazleton's insurance policy. Under Pennsylvania law:

> [T]he interpretation of an insurance contract regarding the existence

13

> or non-existence of coverage is generally performed by the court ... Our purpose in interpreting insurance contracts is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. When the language of the policy is clear and unambiguous, we must give effect to that language. However, when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage.

*Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007) (internal citations and quotation marks omitted). "Pennsylvania courts have consistently upheld exclusionary clauses that clearly and unambiguously limit coverage." *Pa. County Risk Pool v. Northland Ins.*, No. 07-cv-0898, 2009 U.S. Dist. LEXIS 15547, at *12 (M.D. Pa. Feb. 27, 2009) (citing cases). "The insurer, however, bears the burden of proving that any exclusions or limitations apply." *Id*. at *13 (citing *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996); *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)).

Scottsdale argues that the attorney's fees and costs which Hazleton may become obligated to pay the underlying action plaintiffs fall under Exclusion Nine of the policy. That policy exclusion provides:

> We will not be obligated to make any payment nor to defend any "suit" in connection with any "claim" made against the insured:
>
> ...
>
> 9. For "claim(s)," demands, or actions seeking relief or redress in any form other than monetary damages, *or for any fees, costs or expenses which the insured may become obligated to pay as a result of any adverse judgment for declaratory relief or injunctive relief*; however, we will afford defense to the insured for "suit(s)" in which monetary damages are requested if not otherwise excluded;

(Policy, Sec. II) (emphasis added).

14

Hazleton first argues that attorney's fees do not fall under the exclusion because "fees" is an ambiguous term. The Court agrees. In its context, "fees" might reasonably be interpreted as referring to filing fees, witness fees, or any number of "fees" associated with litigation. Because the term is ambiguous as to whether it contemplates the prevailing party's attorney's fees, it must be construed against the insurer and interpreted not to include this item. *Baumhammers*, 938 A.2d at 290.

However, while the term "fees" is ambiguous, the term "costs" is not. In the context of a federal civil rights suit, attorney's fees[5] awarded pursuant to § 1988 fall within the plain, ordinary meaning of "costs." *See also Littlefield v. McGuffey*, 979 F.2d 101, 105 (7th Cir. 1992) (the policy term "costs" included attorney's fees under § 1988); *Bd. of County Comm'rs v. Guar. Ins. Co.*, 90 F.R.D. 405, 407 (D. Colo. 1981) (attorney's fees under § 1988 are "costs" of litigation). Ordinarily, attorney's fees are not recoverable by the prevailing party in a federal action without statutory authorization and "[t]ypically, when such fee-shifting does occur, attorney's fees are awarded as part of the prevailing party's costs." *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 894 (8th Cir. 2000). Here, the text of § 1988 is explicit: "In any action or proceeding to enforce [enumerated civil rights statutes, including 42 U.S.C. § 1981 *et seq*.], the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee *as part of the costs*...." 42 U.S.C. §1988(b) (emphasis added).

The policy at issue provides coverage for liability stemming from the wrongful acts of

---

[5]     Hazleton argues that attorney's fees are not "costs" within the meaning of the policy, but does not dispute that non-fee-related costs fall within its meaning. The Court, therefore, assumes that non-fee-related costs are "costs" under they policy and addresses only whether attorney's fees are also "costs."

Hazleton public officials. "Public officials wrongful act" is defined under the policy as, *inter alia*, the violation of federal civil rights protected under 42 U.S.C. § 1981 *et seq*. Thus, a suit subject to the fee-shifting provision of § 1988 was part of the risk insured against. As a result, the potential for the city to become obligated to pay a prevailing plaintiff's attorney's fees as part of costs was, of necessity, in the parties' contemplation. Exclusion Nine unambiguously places the burden of costs awarded to an opposing party on the insured where they result from an adverse judgment for declaratory or injunctive relief, as will be the case regarding any attorney's fees awarded to plaintiffs in the underlying action.

Hazleton argues that attorney's fees awarded pursuant to § 1988 are "damages," rather than "costs." In support of this position, The city cites *Ypsilanti v. Appalachian Ins. Co.*, 547 F. Supp. 823 (E.D. Mich. 1982). The *Ypsilanti* court considered whether attorney's fees awarded to a prevailing party were "damages" or "costs" within the meaning of the public entity insurance policy there at issue. The relevant policy language stated:

> COVERAGE C. COMPREHENSIVE LIABILITY COVERAGE
>
> Subject to the terms, conditions and limitations hereinafter mentioned, to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as *damages* because of claims ... growing out of the performance of the duties of law enforcement officers or their employees....
>
> SUPPLEMENTARY PAYMENTS -- APPLICABLE TO COVERAGE C
>
> The Company also agrees to pay for the amount of any "*costs*" (which expression shall mean all investigations, adjustments and legal expenses) incurred in the investigation, adjustment and defense of any claims, suits or proceedings which may be brought against the Insured within the coverage of this policy....

*Id.* at 824-25 (emphasis added). The court noted that the term "costs" was defined in the

policy as" investigations, adjustments, and legal expenses" and determined that this definition did not include an attorney's fee award, but only expenses incurred defending a lawsuit. *Id*. at 827. The court then concluded that the term "damages," given its ordinary meaning, could reasonably be interpreted to include an award of attorney's fees in a civil rights suit. *Id*. at 828. Because there existed ambiguity as to whether attorney's fees were encompassed in the term's meaning, the court applied the principle that ambiguities are resolved against the insurer to hold that the award constituted "damages" under the policy. *Id*.

The *Ypsilanti* case is distinguishable for several reasons. Unlike the policy at issue here, the policy in *Ypsilanti* specifically defined "costs." In that context, that court found it limited to the expense of defending a suit. Here, the policy uses the term "costs" first in the "Defense and Supplementary Payments" subsection of Section I, stating: "we will pay all costs taxed against the insured in any 'suit' defended by us." (Policy, Sec. I ¶ 2.) The term is then used in Exclusion Nine in stating that the insurer will not be responsible for payment of "fees, costs or expenses which the insured may become obligated to pay as the result of an adverse judgment for declaratory relief or injunctive relief[.]" The policy here does not limit the term to the expense of defending the insured's suit. Indeed, its use in Exclusion Nine specifically includes costs incurred by an opposing party. Unlike the *Ypsilanti* policy, therefore, the term "costs" in the policy here can and does include an attorney's fee award. The *Ypsilanti* court, moreover, failed to consider the express language of § 1988 in coming to its conclusion that the term "damages" should be construed to included an award of attorney's fees. The Sixth Circuit Court of Appeals noted this point in *Sullivan County v.*

17

*Home Indem. Co*, 925 F.2d 152, 153, 154 (6th Cir. 1991), in distinguishing *Ypsilanti* and holding that attorney's fees awarded under § 1988 were "costs" and not "damages" within the meaning of the insurance policy there at issue. The *Sullivan County* court opined, "[h]ad the attention of the panel that affirmed *Ypsilanti* been directed to the statutory language, we presume the panel would have recognized ... that it was Congress' 'unambiguous intent' in § 1988 to award attorney fees 'as an additional component of the traditional costs taxed by the court....'" *Id*. at 154 (quoting *Oates v. Oates*, 866 F.2d 203, 207 (6th Cir. 1989)).

Hazleton also cites *Kirtland v. Western World Ins. Co.*, 540 N.E.2d 282, 285 (Ohio Ct. App. 1988). That court upheld a trial court's finding that an insurer was obligated to indemnify its insured for the defense of a § 1988 attorney's fee claim by the prevailing plaintiff in the underlying action because the insurer was obligated to pay "money damages" under the policy. *Id*. The court reasoned that, since the term "money damages" was not defined in the policy, and one of the insurer's claims examiners voiced a belief that attorney's fees constituted damages, the ambiguous term should be construed to include such fees. *Id*. The court noted that the insurer should not bear the burden of uncertainty created by the policy-writer. *Id*. This case is also distinguishable. First, it interpreted language different from that considered here. The meaning of the term "costs" was not before the *Kirtland* court. Like the *Ypsilanti* court, it did not consider the statutory language of § 1988 in its analysis.

In sum, the Court finds that attorney's fees awarded pursuant to § 1988 fall within the meaning of "costs" as the term is used in Exclusion Nine of the Hazleton policy.

Hazleton argues in the alternative, even if the Court finds that an award of attorney's

fees under § 1988 falls within Exclusion Nine, Scottsdale is nonetheless obligated to pay the prevailing parties' fees and costs under language contained in the "Defense and Supplementary Payments" section of the policy. That section provides:

> **SECTION I – COVERAGES**
>
> ...
>
> 2.    DEFENSE AND SUPPLEMENTARY PAYMENTS
>
> ...
>
> Subject to the [policy limits] as applicable to each "public officials wrongful act," we will pay all costs taxed against the insured in any "suit" defended by us.

(Policy, Section I.) Hazleton argues that the only limitation on the insurer's obligation to pay all costs for which the insured is responsible is the policy limit cited in the provision. Because Scottsdale defended the underlying action, the city argues it must automatically pay all costs taxed against it up to the policy limits. Hazleton argues that the provision is an exclusion to the application of Exclusion Nine.

The Court disagrees with this reading of the policy. A more straightforward interpretation—and one that considers the provision within the structure of the policy as a whole—suggests that the language "we will pay all costs taxed against the insured in any 'suit' defended by us" is part of Section I's definition of the scope of coverage from which exclusions are then carved under Section II (entitled "Exclusions"). Exclusion Nine, therefore, articulates particular circumstances under which the coverage defined in Section I does not apply. This reading is in harmony with the language of Exclusion Nine itself. The exclusion provides that, although the insurer is not obliged to make payment for "fees, costs

19

or expenses" resulting from an adverse judgment for declaratory or injunctive relief, it "will afford defense to the insured for 'suit(s)' in which monetary damages are requested if not otherwise excluded." (Policy, Sec. II ¶ 9.)  This language contemplates a mixed-claim suit involving claims for both monetary and non-monetary relief.  Under the terms of Exclusion Nine, the insurer would defend such a suit, but maintain an exclusion for the "fees, costs or expenses" resulting from judgments on non-monetary claims.  It would defy logic to presume that the insurer would specifically provide for such a case if it automatically became liable for all costs taxed against the insured in any suit it defended regardless of the exclusion. Policy provisions must read and interpreted together to the extent possible.  *See Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 166 (3d Cir. 1987) ("An insurance policy is a contract, and therefore, as with any contract, a provision of it must be read in the context of the policy as a whole.").  Therefore, the Court rejects Hazleton's alternative argument that Scottsdale is obligated to pay attorney's fees and costs awarded to underlying plaintiffs under the cited provision of Section I of the policy.

Finally, Hazleton argues that Exclusion Nine is contrary to the reasonable expectations of the insured because it is inconspicuously marked in an over sixty (60) page document.  The city cites a Third Circuit Court of Appeals case stating: "we are confident that where the insurer or its agents creates in the insured a reasonable expectation of coverage that is not supported by the terms of the policy that expectation will prevail over the language of the policy."  *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1311 (3d Cir. 1994).  This argument fails for several reasons.   First, Scottsdale specifically brought the Exclusion Nine, among other provisions, to Hazleton's attention in its reservation of rights letter, undermining the argument that its present application is contrary to the city's

reasonable expectations.

Second, the reasonable expectations doctrine has been limited in Pennsylvania in recent years. In *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 439-40 (3d Cir. 2006), the court held that the reasonable expectation of an insured will trump the clear and unambiguous language of a policy only when two circumstances exist: (1) where there is a non-commercial insured and the policy terms are not readily apparent; and (2) where a non-commercial insured is deceived by an insurance agent. *Id*. at 440. As to the first circumstance, the city cannot establish that Exclusion Nine was not readily apparent by simply highlighting the length of the policy. This fails to take into account, for example, that the policy includes several types of public entity coverage, including law enforcement liability coverage, public officials liability coverage, and employment practices liability coverage. The terms of the type of coverage relevant here, public officials liability, encompass only six (6) pages. As to the second circumstance, Hazleton presents no evidence that it was deceived by an agent of Scottsdale regarding the presence or content of Exclusion Nine.

Based on the foregoing, the Court finds that an award of attorney's fees and costs against Hazleton in favor of plaintiffs in the underlying action falls under Exclusion Nine of the policy and that the exclusion applies to preclude any obligation by Scottsdale to indemnify the city for these items. The Court will, therefore, grant Scottsdale's motion for summary judgment as to Count II of its complaint.

C.    Count III

In Count III of its complaint, Scottsdale seeks a declaration that it has no duty to pay attorney's fees, costs, or expenses incurred by Hazleton for attorneys and consultants it retained directly without the prior written approval of the insurer. This claim arises from

21

Hazleton's request that Scottsdale pay for the services of attorney Kris Kobach. Scottsdale argues that, though Hazleton agreed to pay Mr. Kobach for his services in its defense, the insurer expressly declined to do so in its reservation of rights letter. Because it never consented to pay Mr. Kobach, Scottsdale argues, they city must bear the cost under the express terms of the policy. Hazleton does not directly counter this argument, but appears to argue that Scottsdale is obligated to pay for Mr. Kobach's services pursuant to an insurer's duty to appoint counsel free from a conflict of interest.

An insurer's duty to defend includes providing competent counsel and paying the reasonable, necessary costs of the representation. *See Rector v. Am. Nat'l Fire Ins. Co.*, 97 Fed. App'x 374, 378 (3d Cir. 2004) (citing *Gray Cary Ware & Freidenrich v. Vigilant Ins. Co.*, 114 Cal. App. 4th 1185, 8 Cal.Rptr. 3d 475, 477 (Cal. Ct. App. 2004)). When an insurer retains counsel to defend its insured, "the insured is considered the client.... If a conflict of interest arises between an insurer and its insured, the attorney representing the insured must act exclusively on behalf of and in the best interests of the insured." *Rector, Wardens and Vestryman of St. Peter's Church v. Am. Nat'l Fire Ins. Co.*, No. 00-cv-2806, 2002 U.S. Dist. LEXIS 625, at *29 (E.D. Pa. Jan. 14, 2002) (quoting *Builders Square v. Saraco*, No. 940-cv-0164, 1996 U.S. Dist. LEXIS 19444, at *10 (E.D. Pa. Dec. 27, 1996) (internal quotation marked omitted). Where a conflict of interest between the insurer and the insured raises a question as to the loyalty of the insurer's chosen counsel in representing the insured, the insured is entitled to choose its counsel, whose reasonable fee must be paid by the insurer. *Id.* at *29-*30.

Assuming without deciding that Scottsdale had a duty to defend the city, invoking a

duty to provide competent counsel, Hazleton nonetheless cannot show that the insurer

breached such duty. Scottsdale provided representation by the Deasey firm, whose services

the city accepted. Even if there existed a conflict of interest between the insured and the

insurer, the city has not shown that Scottsdale failed to provide conflict-free counsel in

funding the Deasey firm's representation. While an attorney or firm engaged in dual

representation of the insurer and the insured would certainly present a conflict of interest,

the fact alone that counsel was hired by an insurer does not raise a conflict as to counsel's

representation of the insured. *See Ingersoll-Rand Equip. Corp. v. Transportation Ins. Co.*,

963 F. Supp. 452, 454 (M.D. Pa. 1997) ("When an insurer retains an attorney to represent

an insured, pursuant to the insurer's duty to defend, that attorney's client is the insured, not

the insurer.") In support of the theory that the Deasey firm's loyalty was in question,

Hazleton points to the deposition of a Deasey attorney engaged in Hazleton's defense,

during which the following colloquy took place:

> Q: Did you even have any discussions with Plaintiff's Counsel as to why they no longer included [damages claims]?
>
> A: No.
>
> Q: Do you have any knowledge or understanding why they did that?
>
> A: Well, I'd like to think that I gave [certain plaintiffs] such a hard time in their depositions about the damages they were claiming, which really I felt were bogus, that that was one of the reasons why they dropped it. But I don't know for sure why they dropped it.

(Ex. E, HS-205, Doc. 43.) The city argues that the attorney's tactic of giving plaintiffs a

difficult time over damages ultimately benefitted Scottsdale by encouraging covered claims

to be dropped. Hazleton provides no evidence, however, that the attorney was acting on

23

behalf of or for the benefit of Scottsdale.  Without such a connection to insurance coverage, the fact that the Deasey attorney engaged aggressive tactics to undermine a damages claim does not appear to be conduct adverse to the city's interests.

Moreover, Hazleton accepted the services of the Deasey firm.  This distinguishes the present circumstances from a case such as *Rector*, 2002 U.S. Dist. LEXIS 625.  In that case, the court found that there existed a conflict of interest between insurer and insured and concluded the insurer must allow the insured to choose its counsel and offer reimbursement for his or her reasonable fees.  *Id*. at *29-*30.  At the time of the action, however, the insurer had not retained counsel for the insured; it had made several offers of proposed counsel which were rejected by the latter on ground of potential conflict of interest.  *Id.* at *6.  Here, Hazleton accepted the Deasey firm's representation, but makes the argument that Scottsdale is *also* obligated to pay for its additional, independently retained counsel.  The Court disagrees that the duty to defend requires so much.

Having determined that Scottsdale is not obligated to pay for Mr. Kobach's services pursuant to a duty to defend the city, the express terms of the policy control.  It provides: "The insured, except at its own cost and for its own account, will not, without our written consent, make any payment, admit any liability, settle any "claim," assume any obligation, or incur any expense."  (Policy, Section I, ¶ 2.)  Citing this policy language, Scottsdale specifically declined to give consent for payment of Mr. Kobach's fees in its reservation of rights letter.  Therefore, the insurer has no obligation to make such payments under the policy and the Court will grant Scottsdale's motion for summary judgment as to Count III.

## II.    Hazleton Counterclaims

### A.    Breach of Contract

Hazleton asserts a breach of contract counterclaim, alleging that Scottsdale breached the terms of the policy by (1) refusing to reimburse the city for Mr. Kobach's services and (2) refusing to pay any attorney's fees awarded to plaintiffs in the underlying action.

To make out a claim for breach of contract under Pennsylvania law, a party must show: (1) the existence of a contract; (2) a breach of a duty imposed by the contract, and (3) damages. *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. Ct. 2005). The parties do not dispute the first element. Scottsdale argues, however, that it did not breach any duty owed to Hazleton under the policy. The Court agrees, based on the above analysis of Counts II and III of Scottsdale's complaint, concluding that Scottsdale has no obligation under the policy to compensate Hazleton for the claimed items. The Court will, therefore, grant Scottsdale's motion for summary judgment as to Hazleton's breach of contract counterclaim.

### B.    Bad Faith

In its second counterclaim, Hazleton raises a claim for bad faith. An action for bad faith in Pennsylvania is governed by 42 Pa. Cons. Stat. § 8371 which provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371. Though statute does not define the term "bad faith," the Third Circuit Court of Appeals predicted in *Northwestern Mutual Life Insurance Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005), that the Pennsylvania Supreme Court would define the term as set forth by the Pennsylvania Superior Court in *Terletsky v. Prudential Property and Casualty Insurance Co.*, 649 A.2d 680 (Pa. Super. Ct. 1984). The *Terletsky* court defined bad faith as follows:

> "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

649 A.2d at 688 (quoting *Black's Law Dictionary* 139 (6th ed. 1990)) (citations omitted). The *Babayan* court further held that, in order to recover on a bad faith claim, the insured must prove:

> (1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim.

430 F.3d at 137.

Courts have not restricted § 8371 to an insurer's denial of a claim, allowing bad faith claims for other conduct, including an insurer's investigative practices. *Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1142 (Pa. Super. Ct. 2006); *see also Aquila v. Nationwide Mut. Ins. Co.*, No. 07-cv-2696, 2008 U.S. Dist. LEXIS 101518 (E.D. Pa. Dec. 15, 2008) (bad faith

claim for insurer's handling of insured's claim).

The insured has the burden of proving its bad faith claim by clear and convincing evidence. *Babayan*, 430 F.3d 137. Thus, the insured's burden in opposing a summary judgment motion is "commensurately high because the court must view the evidence presented in the light of the substantive evidentiary burden at trial." *Id*. (quoting *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Hazleton alleges numerous grounds for its claim of bad faith. Several allegations pertain to Scottsdale's denial of coverage for Mr. Kobach's fees as well as potential attorney's fees and costs awarded to plaintiffs in the underlying action. It is well-settled that, where a court finds no duty to defend or indemnify, a bad faith claim cannot survive "because the court's determination that there was no potential coverage means that the insurer had good cause to refuse to defend [or indemnify]." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir. 1999). Based on the Court's conclusions regarding coverage as to Counts II and III of the Scottsdale complaint, these allegations cannot form the basis of a bad faith claim.

Several grounds for Hazleton's bad faith claim pertain to the insurer's alleged failure to put the city on notice of the potential grounds for the insurer's denial of coverage. It argues that the relevant language is unreasonably presented in the policy document. Additionally, it argues that the insurer should have reissued its reservation of rights letter after filing of the SAC in the underlying action. However, the Court finds neither argument persuasive. In its November 9, 2006 reservation of rights letter, Scottsdale specifically

highlighted all policy language at issue and identified each coverage issue contested here. Even if the language was unreasonably presented in the policy, it was conspicuously repeated in the letter. Additionally, because the potential coverage issues identified in the November 9th letter did not change after filing of the SAC, there was no need to reissue the letter to place Hazleton on notice.

Hazleton also asserts a bad faith handling of its claim based on Scottsdale's three (3) month delay prior to issuing a reservation of rights letter. The Court does not find this to be clear and convincing evidence of bad faith. The insurer retained counsel for the city's defense with days of receiving notice of its claim. Moreover, this Court agrees with the district court in *Rector* in finding that a three (3) month delay in issuing a reservation of rights letter is not unreasonable. 2002 U.S. Dist. LEXIS 625, at *24-*25, *32.

Finally, Hazleton suggests that Scottsdale pursued a trial strategy intended to avoid coverage. As evidence, it points to the deposition, discussed above, in which a Deasey firm attorney testifies to giving plaintiffs a difficult time regarding damages claimed in their complaint, and to the plaintiff's subsequent abandonment of the damage claims. However, as previously stated, there is no evidence in the record that the attorney pursued a strategy to have plaintiffs' damage claims dropped on behalf of or for the benefit of Scottsdale. Consequently, the evidence does not show that *Scottsdale* pursued a certain trial strategy.

The Court finds that Hazleton has failed to demonstrate clear and convincing evidence of bad faith. It will, therefore, grant Scottsdale's motion for summary judgment as to the city's bad faith counterclaim.

C.     Declaratory Judgement

Hazleton raises a third counterclaim, requesting the Court to enter declaratory judgment in its favor essentially mirroring the declaratory relief requested in Counts I, II, and III of Scottsdale's complaint. The Court addressed the requested relief in its disposition of Scottsdale's complaint. The Court will, therefore, dismiss this counterclaim as moot.


**CONCLUSION**

For the foregoing reasons, the Court will dismiss Count I of Scottsdale's complaint for lack of subject matter jurisdiction. It will grant Scottsdale's motion for summary judgment as to Counts II and III of the insurer's complaint and Hazleton's counterclaims for breach of contract and bad faith. Finally, the Court will dismiss as moot Hazleton's counterclaim for declaratory judgment.

An appropriate Order follows.


May 28, 2009                                    /s/ A. Richard Caputo
Date                                            A. Richard Caputo
                                                United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SCOTTSDALE INSURANCE CO.,

    Plaintiff,

        v.

THE CITY OF HAZLETON, et al.,

    Defendants.

NO. 3:07-CV-1704

(JUDGE CAPUTO)

**ORDER**

**NOW**, this   28th   day of May, 2009, **IT IS HEREBY ORDERED** that:

(1)    Count I of Plaintiff-Counterclaim Defendant Scottsdale Insurance Company's Complaint (Doc. 1) is **DISMISSED**.

(2)    Plaintiff-Counterclaim Defendant Scottsdale Insurance Company's Motion for Summary Judgment (Doc. 18) is **GRANTED** as to Counts II and III of its Complaint (Doc. 1) and the City of Hazleton's First and Second Counterclaims.

        (A)    Scottsdale Insurance Company is not obligated to pay attorney's fees, costs, or expenses awarded against the City of Hazleton to plaintiffs in the underlying action, docketed in the U.S. District Court for the Middle District of Pennsylvania under docket number 3:06-cv-1586, resulting from any adverse judgment for declaratory or injunctive relief entered therein.

        (B)    Scottsdale Insurance Company is not obligated to pay attorney's fees, costs, or expenses incurred by the City of Hazleton for attorneys or consultants it retained directly, without the prior approval of the insurer, in connection with the underlying action.

(3)    Defendant-Counterclaim Plaintiff City of Hazleton's Third Counterclaim is **DISMISSED as moot.**

(4)    The Clerk of Court is directed to enter final judgment in favor of Plaintiff-

Counterclaim Defendant Scottsdale Insurance Company and against Defendant-Counterclaim Plaintiff City of Hazleton.


/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge